THE STATE OF NEBRASKA, EX REL. S. H. BURNHAM,.
v. H. A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS,.
AND G. L. LAWS, SECRETARY OF STATE.

1. **Statutes:** AMENDMENTS. An act to amend section 25 of chapter 18 of the Compiled Statutes of 1885 was passed and approved March 30, 1887, to take effect from date, and on the succeeding. day an act was passed to amend the second division of section. 25 of chapter 18 of the Compiled Statutes of 1885. *Held,* That the amendment related to the section 25 as amended on March. 30, 1887.

2. ———: ———: CONSTITUTIONAL LAW. The word "section," when relating to an act passed by the legislature, refers to a subdivision, and although designated in the amendatory act,. division two of section 25, chapter 18, yet being in fact a section it is not in conflict with section 11, article III. of the constitution.

3. ———: ———: ———. An act will not be declared unconstitutional and void unless it is clearly so, and where an amendment is so distinctly pointed out that there is no difficulty in ascertaining to what chapter it was intended to apply, and it is germane to the title of the act amended, ordinarily it will be sustained.

ORIGINAL application for mandamus.

*Marquett, Deweese & Hall,* for the relator, cited: *Colwell v. Chamberlin,* 43 N. J. Law, 387. *Fiebleman v. State,* 98 Ind., 516. *Timm v. Harrison,* 109 Ill., 593.. *Dogge v. State,* 17 Neb., 140. *State v. Berka,* 20 Id., 376.. *People v. Hoffman,* 97 Ill., 234.

*William Leese, Attorney General,* for respondent, cited : *Town of Martinsville v. Frieze,* 33 Ind., 507. *Jones v.. Commissioners,* 21 Mich., 236. *Tuscaloosa Bridge Co. v.. Olmstead,* 41 Ala., 9. *Lehman v. McBride,* 15 Ohio State,. 601.

MAXWELL, J.

This is an application for mandamus to compel the auditor to register and certify certain bonds issued by Logan county for the erection of a court-house.    The case is submitted upon the following stipulation:

"It is hereby stipulated and agreed by and between the parties hereto that the annexed transcript, marked 'Exhibit A,' and which is incorporated into and made a part of this stipulation, is a true and accurate history and transcript of all things connected with and pertaining to the voting of $5,000 of bonds of the county of Logan, state of Nebraska, on the 1st day of October, 1887, said bonds having been presented to the auditor of state for registration, and he having refused to register said bonds solely on the ground that the law of 1887, being chapter 28, entitled 'An act to amend the second division of sections 25 and 26, chapter 18 of the Compiled Statutes of 1885, so that the county boards shall have power to borrow money and issue bonds for the payment thereof to erect or otherwise provide the necessary county buildings,' is unconstitutional and void.

"It is further stipulated and agreed that the relator herein has purchased the said Logan county bonds, and is the owner thereof.

"This question is submitted for the consideration and decision of the court.    If it shall be held that the law above designated is constitutional and valid, then the writ of mandamus shall be issued to the auditor and secretary of state, requiring them to register and certify said bonds above described."

On the 30th day of March, 1887, a bill was duly passed and approved to amend section 25 of chapter 18 of the Compiled Statutes of 1881, as follows:

"It shall be the duty of the county board of each county—

" First—To cause to be annually levied and collected, taxes authorized by law for county purposes not exceeding one dollar and fifty cents on the one hundred dollars valuation, unless authorized by a vote of the people of the county, and in addition thereto sufficient to pay the interest and create a sinking fund for the payment of the principal of all indebtedness which existed at the adoption of the constitution November 1, 1875.

" Second—To erect or otherwise provide, when necessary, and the finances of the county will justify it, and keep in repair a suitable court-house, jail, and other necessary county buildings, and to provide suitable rooms and offices for the accommodation of the several courts of record, the county board, clerk, treasurer, sheriff, clerk of the district court, county superintendent and county attorney, and to provide suitable furniture therefor. But no appropriation exceeding fifteen hundred dollars shall be made for the erection of any county building without first submitting the proposition to a vote of the people of the county at a general election, and the same is ordered by two-thirds of the legal voters voting thereon.

" Third—To provide and keep in repair, when the finances of the county will permit, suitable fire proof safes for the county clerk and county treasurer.

" Fourth—To provide suitable books and stationery for the use of the county board, county clerk, county treasurer, county judge, sheriff, clerk of the district court, county superintendent, and county attorney.

" Fifth—To cause to be published at the close of each annual, regular, or special meeting of the board a brief statement of the proceedings thereof, in one newspaper of general circulation published in the county, and also their proceedings upon the equalization of the assessment roll; *Provided,* That no publication in a newspaper shall be required unless the same can be done at an expense not exceeding one-third of the legal rate for advertising notices.

"Sixth—At their regular meeting in January of each year, to prepare an estimate of the necessary expenses of the county during the ensuing year, the total of which shall in no instance exceed the amount of taxes authorized by law to be levied during that year, including the amounts necessary to meet outstanding indebtedness, as evidenced by bonds, coupons, or warrants legally issued, and such estimate, containing the items constituting the amount, shall be entered at large upon their records and published four successive weeks before the levy for that year in some newspaper published and in general circulation in the county, or, if none is published there, in some newspaper of general circulation therein, and no levy of taxes shall be made for any other purpose or amount than are specified in such estimate as published, but any item or amount may be stricken from such estimate or reduced at the time the levy is made. If any levy shall be made in excess of such estimate, the tax shall not therefore be void, but the members of the county board and their sureties shall be jointly and severally liable upon their official bonds for the full amount of such excess, which shall be collected by civil action as in other cases, for the use of the school fund of the county. If the members of the said board neglect to comply with any other provision of this section, the tax shall not therefore be void, but they shall be liable to a penalty of five hundred dollars, to be recovered by civil action as in other cases, for the use of the school fund of the county.

"Seventh—That in all cases where any public bridge, or any public building, the property of any county within this state, shall be injured or destroyed by any person or persons, either negligently, carelessly, or willfully and maliciously, it shall be the duty of the county board of the proper county, for, and in the name of the county, to sue for and recover such damages as shall have accrued by reason thereof, and the money so recovered shall be paid

into the treasury of the proper county, and be by the treasurer credited to the fund out of which bridge or building was constructed or repaired.

" Sec 2.    That section one, of which this act is amendatory, and all acts or parts of acts in conflict with this act, are hereby repealed.

" Sec. 3.    Whereas, an emergency exists, therefore this act shall take effect and be in force from and after its passage.

"Approved March 30, 1887."

On the succeeding day the following act was passed and approved:

" An act to amend the second division of sections 25 and 26, chapter 18 of the Compiled Statutes of 1885, so that county boards shall have power to borrow money and issue bonds for the payment thereof, to erect or otherwise provide the necessary county buildings.

" *Be it enacted by the Legislature of the State of Nebraska:*

" Section 1.    Division second of section 25, chapter 18, Compiled Statutes, is hereby amended so as to read as follows:

" Sec. 25.    To erect or otherwise provide a suitable courthouse, jail, and other necessary county buildings, and for that purpose to borrow money and issue the bonds of the county to pay the same; to keep the said buildings in repair and to provide suitable rooms and offices for the accommodation of the several courts of record, the county board, clerk, treasurer, sheriff, clerk of the district court, and county superintendent and county attorney, provided said county attorney shall hold his office at the county seat, and suitable furniture therefor.    But no appropriation exceeding fifteen hundred dollars ($1,500) shall be made for the erection of any county building without first submitting the proposition to a vote of the people of the county at a general election, or a special election ordered by said

board for that purpose, and the same is ordered by three-fifths of the legal voters voting thereon."

Sec. 11, Art. III. of the constitution, provides that, " Every bill and concurrent resolution shall be read at large on three different days in each house, and the bill and all amendments thereto shall be printed before the vote is taken upon its final passage. No bill shall contain more than one subject, and the same shall be clearly expressed in its title."

Two questions are presented by the record: First, does section 25, as amended on the 30th day of March, 1887, take the place of section 25, chapter 18, Compiled Statutes of 1885? Second, is the amendment of section 25, passed and approved March 31, 1887, in conflict with section 11, Art. III. of the constitution?

As to the first proposition, the amendment took immediate effect upon its passage, and was in force when the act referred to amending the second division of section 25, chapter 18, was passed and took effect. It is true that the amendment did not date in the year 1885, but this would lead to no confusion, because the chapter amended is found in the compilation of 1885. This court has held heretofore that all that the law requires is, that the amendatory statute shall be definite and certain as to the statute amended and germane to the title of the original act. And that may be accomplished as well by designating the chapter in the Compiled Statutes as by referring to the act by its title. The legislature alone decides upon the title of an act or an amendment thereto, and it will not be declared unconstitutional unless it is clearly so. *Dogge v. State*, 17 Neb., 143. In our view, therefore, the section intended to be amended is clearly pointed out, and is not void as being within the constitutional inhibition.

The second definition given by Webster of the word " section," so far as it relates to this subject, is as follows: " A part separated from the rest; a division ; a portion ;

as, specifically, (a)· A distinct part or portion of a book or writing ; the subdivision of a chapter, the division of a law or other writing ; a paragraph ; an article ; hence, ˙the character §, often used to denote such a division."

A correct definition of the word, probably, as applied to a chapter in a statute, is a subdivision. In the case at bar section 25 is subdivided into seven different parts, each of which treats of distinct powers of the county board. In fact they are seven sections, as much so as the other sections in the chapter, although classified as subdivisions of section 25. In construing the power of the legislature it is the duty of this court to sustain acts duly passed and approved unless they are clearly inimical to the provisions of the constitution. Now, the amendment in this case is clear and definite, both as to the part of the chapter to be amended and to the powers conferred on the county board. It certainly will not do for this court under such circumstances to declare an act unconstitutional upon merely technical grounds, viz., that the subdivision, although a section within the meaning of that word, is not so designated in the statute.

The authority from Indiana sustaining a contrary view seems to place too much stress upon a mere name. We entertain a very high regard for that able court, but are unable to give our assent to its conclusions in that case.

The question of the amendment of statutes has been before this court in a number of cases. In *Miller v. Hurford*, 13 Neb., 17, the title of the act was to amend sections 50, 51, 71, and 105 of an act entitled an act to provide a system of revenue, approved February 16th, 1869, and it was held that an act to amend two or more sections, which were designated, would be sustained, and that if it was sought to amend sections not in the act sought to be amended the latter would be rejected as surplusage.

In *State v. Laughlin*, 14 Cent. Law Journal, 454, where one Pate was indicted for gambling, under an act

the title of which was, "An act to amend section 1549 of Art. VIII. of Revised Statutes, relating to offenses against public morals and decency, or the public police and miscellaneous offenses," the court sustained the amendment as valid, and the same ruling was held in the *City of Kansas v. Payne,* 71 Mo., 159, the last section of the act being rejected as independent matter. See also *State v. Ransom,* 73 Mo., 78.

In *Comstock v. Judge,* 39 Mich., 195, it was held that the practice of amending sections by reference thereto, instead of by reference to subjects of the entire statute, is not a satisfactory compliance with the constitutional requirement, yet where the amendment is plain and can be carried out it may be held valid, even though the section numbers of the original act and of the amendment are in confusion. See also *People v. Common Council,* 38 Mich., 636. *Bowman v. Cockrill,* 6 Kas., 311. *Prescott v. Beebe,* 17 Id., 320. *State v. Bankers, etc., Ass'n.,* 23 Id., 499.

Sufficient doubt existed in this case, in view of the Indiana decision, to warrant the defendants in asking this court to construe the statute before certifying the bonds, and it is evident that they and the attorney general have acted in the utmost good faith to prevent the possibility of purchasers of the bonds being defrauded of their money by reason of the want of authority to issue the same. But according to the well-established rule of this court, that an act will be sustained unless it is clearly in conflict with the constitution, and not finding such conflict in this case, the acts referred to will be sustained as being valid, and a peremptory writ will issue as prayed for in the petition.

JUDGMENT ACCORDINGLY.

THE other judges concur.