Serra, Garabís & Co., Inc., Plaintiff Appellee, *v.* Municipality of Río Piedras, Defendant and Appellant.*

No. 4705.   Argued February 18, 1930.—Decided June 23, 1931.

---

* Note.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was affirmed in part and reversed in part. See 65 F. (2d) 691.

*Guerra Mondragón & Soldevila* for appellant. *Feliú & La Costa* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

Serra, Garabís & Co., Incorporated, brought suit against the Municipality of Río Piedras in the District Court of San Juan, and substantially alleged that it is the successor of Serra, Garabís & Company, *S. en C.,* from which it had purchased all the business of wholesale drugs and drugstore, and its assets, and among these, a claim against the Municipality of Río Piedras amounting to $6,072.33 covering the value of medicines, drugs, and pharmaceutical products sold to said municipality; which goods and supplies were furnished, sold, and delivered by Serra, Garabís & Company, *S. en C.,* to the municipality aforesaid on November 23, December 19, 1924, and January 16, February 26, and March 26, 1925, the municipality having received and accepted these goods, using them in the municipal drugstore at Río Piedras for the benefit of the indigent patients of said municipality, their reasonable value being that fixed in the bills referred to in the complaint; that the municipality bound itself to pay the value of said medicines, drugs, and pharmaceutical products upon the presentation of a bill, in duplicate, signed by Serra, Garabís & Company, *S. en C.,* accompanying the municipality's order covering the corresponding supplies; that these bills were presented by said Serra, Garabís, & Company, *S. en C.,* and payment requested by plaintiff, and the municipality has refused to make such payment. It prayed that judgment be rendered against the municipality for $6,072.23, together with costs and legal interest.

The defendant filed a motion to strike out, which was overruled, and later a demurrer to the complaint, which was also overruled. Even after this decision, the defendant filed a motion to make the complaint more definite and certain, and this was overruled. It then answered, admitting that it owed the plaintiff the bill dated November 23, 1924, for $1,700, and the December bill of the same year for $2.25; it objected to and denied the bills dated December 19, 1924,

for $721.94; January 16, 1925, for $872.00; February 26, 1925, for $1,065.27; and March, 1925, for $1,710.87, the items of which it claims it did not purchase, order, or receive. It alleged that the bid was awarded to Serra, Garabís & Company, *S. en C.*, and had been provided by an ordinance approved for the fiscal year 1924–1925 but on condition that the orders be signed by the Municipal Director of Charities, who did not issue any orders other than those acknowledged in the answer, the bills covering which were the only ones received accompanied by the orders from the municipality; and that, after these two orders were filled, there was no item in the municipal budget for the payment of medicines; and that, even if the municipality had ordered more medicines and goods, such action would have been unconstitutional and void as being contrary to the Organic Act and the laws of Puerto Rico. It prayed that the complaint be sustained as to the bills acknowledged and dismissed as to the others.

From the documentary evidence, the following essential points appear:

(*a*) The ordinance calling for bids for the furnishing of medicines to the municipal drugstore of Río Piedras during the fiscal year 1924–1925. By the terms of this document, bids were to be called for the purchase of medicines, in accordance with the list furnished by the municipal druggist; it fixed the date and place for submitting bids, the terms of the proposals, and the procedure in connection with the latter and with the award; and it provided that the successful bidder should, within the first four days after the award, make delivery of the medicines and drugs which might be ordered from the list attached to the ordinance, and that he would have the right to payment of the value thereof immediately after they were received in order by the municipal druggist. And in clause or section 6, we read:

"Section 6.—The successful bidder is bound to furnish all the

medicines which may be needed in the municipal drugstore until the end of the corresponding fiscal year as ordered in accordance with the terms and prices stipulated by himself in his proposal.''

This ordinance was dated May 31, 1924; and the list of medicines and supplies is attached thereto.

(*b*) The orders bearing the following dates:

December 19, 1924, for the amount of $721.94.

January 16, 1925, for $872.00.

February 26, 1925, for $1,065.27.

March 26, 1925, for $1,710.87.

To each of them there is attached a certificate, signed by J. Vilá Mayo, municipal druggist, reciting that the articles listed were necessary for use in that dependency. The certification of the municipal auditor and the approval appear in blank.

(*c*) A copy of article or section 24 of the Regulations governing municipal accounting.

(*d*) A copy of the regular budget of the Municipality of Río Piedras. In Chapter V, Public Charities, there is an item numbered 95 for medicines for the indigent patients, antiseptic cures, etc, for $4,000.00. From the certificate it appears that this budget was approved by the Municipal Assembly on the first or the tenth of June, 1924.

In addition there are other documents, to which we shall refer if necessary.

From a slight examination of the above documents it appears, in the first place, that defendant's allegation to the effect that the ordinance calling for bids required as a condition for the furnishing of medicines an order signed by the Municipal Director of Charities is not correct, as far as the ordinance is concerned. This is a point which we find to be very important in the pleadings and which we must emphasize.

In this case testimony was given on behalf of the plaintiff by Francisco Garabís, of Serra, Garabís & Co., Inc., and

by J. Vilá Mayo, municipal druggist of Río Piedras; and on behalf of the defendant by Dr. Pereira Leal, director of charities of Río Piedras in 1924 and 1925.

The court rendered judgment in favor of the plaintiff, and the defendant has appealed from such judgment.

Seven errors are assigned by the defendant. The first three refer to the overruling of the motion to strike out, the demurrer to the complaint, and the motion to make the complaint more definite and certain; the fourth, to the weighing of the evidence; the fifth, to the sufficiency of the defense that there being no appropriation in the budget, the municipality is not bound to pay for the goods so acquired; the sixth, to the validity of the debt; and the seventh, to the failure to apply the Regulations of the Auditor.

The first error is formulated thus:

"The district court erred in overruling defendant's motion to strike out."

In said motion it was requested that certain words in paragraph III and all of paragraph VI of the complaint be stricken out; from paragraph III, the following:

" . . . owed by the defendant municipality to the said partnership Serra, Garabís & Co., S. en C., covering the value of medicines, drugs, and pharmaceutical products which were sold by that company to said municipality."

The existence of a contract, the furnishing of medicines, etc., for a definite price and the default in the payment thereof had been alleged. We cannot find that the allegation above quoted can be characterized as a legal conclusion. The words "to owe" (*adeudar*) when coupled with said allegations of fact, can not be considered as a legal conclusion; in ordinary, common language, there is no expression, other than the one used by the plaintiff, to signify an indebtedness.

In the cases of *Martínez* v. *Oppenheimer*, 31 P.R.R. 855, and *Alfaro* v. *Alonso*, 27 P.R.R. 50, this Court has held that

when conclusions of law complement allegations of fact they are permissible. And even though it were considered that said words contained a conclusion of law, this would be permissible in the instant case.

In paragraph VI of the complaint it is alleged that. the market value of the medicines and drugs furnished is the one appearing in the bills attached thereto. In paragraph V reference is made to these bills and as to how they were sent to the municipality.

The defendant-appellant maintains that recovery of an amount upon a contract being sought, said paragraph VI is impertinent and creates confusion. But really there is no possibility that this paragraph in itself would cause in the defendant the confusion claimed nor deprive him of any defense unless the defendant omitted reading the other allegations, which would not be a good way to be informed of the complaint.

The district court correctly decided the motion.

The complaint was attacked by demurrer on the grounds of ambiguity and uncertainty, misjoinder of causes of actions, and insufficiency. The first one of these grounds was predicated upon the claim that it is not clear from the allegations whether the recovery sought is for goods sold or for articles furnished without a previous acceptance. A slight perusal of the pleadings suffices to convince one that there is no such ambiguity. The second ground rested on the assumption that, in the complaint, two different grounds of debt appeared, viz., the agreed price of a sale, and the value of goods received without previous agreement as to price. This is not so; the complaint is clear as to the only cause of action set forth therein, which is no other than the recovery of the value of goods furnished under a contract with the municipality. And the third ground can not be sustained either, as all the necessary allegations appear in the complaint. It was so deemed by the court, which overruled the demurrer.

The second assignment of error, which can not be sustained, refers to this ruling of the court.

The third assignment relates to the ruling on the motion to make the complaint more definite and certain, based on the claim that in some paragraphs of the complaint it is alleged that the amount sought to be recovered originated in goods and drugs sold to the defendant, while in other paragraphs, not the purchase price, but the reasonable market value of the goods is averred. As a matter of fact, this is not so, nor does it appear so from the complaint.

As the trial court overruled that motion, the defendant assigns such ruling as error. Apart from the fact that it is doubtful whether, as a general rule, this would be a reviewable error, the ruling of the court was correct.

The fourth assignment is stated thus:

"The lower court erred in considering the evidence adduced at the trial as sufficient to support the judgment."

Really, and regardless of its language, this assignment presents nothing else than the theory of the erroneous weighing of the evidence. The assignment could readily be disposed of by following the constant jurisprudence of this Court, bearing in mind that no passion, prejudice or partiality is charged and that there is no suggestion that manifest error was committed by the court *a quo* in the weighing of the evidence, to the prejudice of any substantive or adjective right of the defendant. But there is no objection to considering the argument adduced.

It is to be noted that neither the delivery of medicines and drugs, nor their value, nor their reception by the municipal druggist, nor their use is questioned. In fact, the only question argued is the effect of certain clauses of the ordinance calling for bids; and then we must state that the argument is not congruent with the wording of the assignment.

In the opinion delivered by the district judge we find, in regard to the evidence, the following:

" . . . The evidence of the plaintiff consisted of a contract of sale executed by Serra, Garabís, Inc.; a copy of the ordinance adopted by the Council of Administration of Río Piedras on May 31st, 'calling for bids for the furnishing of medicines to the municipal drugstore during the fiscal year 1924–1925'; and four orders made out to Serra, Garabís & Co., *S. en C.*, for the delivery of medicines, dated respectively December 19, 1924, January 16, February 26, and March 26, 1925. Witnesses Francisco Garabís and J. Vilá Mayo also testified on behalf of the plaintiff. The evidence of the defendant consisted of paragraphs (*a*) and (*i*) of section 24 of the Municipal Accounting Regulations of the Auditor, approved May 26, 1920; page 34 of the Registry Book of Orders of the Municipality; and, a copy of the regular budget of the municipality of Río Piedras for the fiscal year 1924–1925. Dr. Pereira Leal, director of charities during the year 1924–25, also testified as a witness. From all this evidence adduced, the court. considers the following facts as proved: That by an ordinance of May 31, 1924, the municipality called for bids for the furnishing of medicines for the municipal drugstore for the fiscal year 1924–25; that the award was made to Serra, Garabís & Co., *S. en C.*; that the clauses covering the delivery and payment of medicines under this ordinance read thus:

" 'The bidder to whom the award is made shall, within four days from the date of the award, deliver the medicines and drugs which may be ordered from the list appearing in section 3 of this ordinance and shall be entitled to payment therefor in the full amount· immediately upon their receipt by the municipal druggist and if in accordance with the respective bills.

" 'Section 6.—The successful bidder is bound to furnish all the medicines which may be needed in the municipal drugstore until the end of the corresponding fiscal year as ordered in accordance with the terms and prices stipulated by himself in his proposal.'

"That Serra, Garabís & Co., *S. en C.*, sold all its business, rights, and assets to Serra, Garabís & Co., Inc.

"That the orders for furnishing medicines dated respectively December 19, 1924, January 16, February 26, and March 26, 1925, signed by J. Vilá Mayo, municipal druggist, were filled by Serra, Garabís & Company, *S. en C.*, and the goods received by said J. Vilá Mayo as municipal druggist; that there was no claim made by the municipality; that said orders are true copies of the originals prepared by said J. Vilá Mayo as municipal druggist; that the medicines were

used in the hospital and in the municipal drugstore; that at the end of the fiscal year 1924–25 the orders were presented to the director of charities, and that he refused to sign them because they were of a back date and there were no funds available, and also because the orders were not made in accordance with the Regulations of the Auditor.''

No other findings than the above could reasonably have been made by the court. If the sufficiency of the evidence be considered, we must state that there was no error; if what counsel desired was to discuss the legal effect of said evidence, then the fourth assignment of error is not adequately framed to that end.

It is perfectly clear that the municipality which entered into the contract with Serra, Garabís & Company, *S. en C.,* had knowledge of clauses 5 and 6 of the ordinance, and that it was aware of the obligation which it incurred thereby to pay for the value of the medicines and drugs immediately upon their being received in order by the municipal druggist. The fact of the receipt of said goods created, under the contract, the obligation to pay.

The defense of a lack of appropriation in the budget is weak, and somewhat risky. In ordinary language, stripped of all juridical or legal terminology, this defendant tells us: ''I made a contract, according to which the other contracting party would furnish all the drugs and medicines which I needed for my hospital and for charitable services for one year; I bound myself to pay to the other party for these drugs and medicines, but as I did not appropriate a sufficient amount in my budget, I do not have to pay the indebtedness incurred.'' The application of this defense to all contracts in life would necessarily result in the abolition of the codes, founded essentially on the rules of ethics, which are incompatible with the theory on which the defense rests.

The district judge has rightfully said in his opinion:

''The fact that no sufficient funds to pay for the orders were available, and therefore none could be authorized, is no defense . . .

" . . . Furthermore, the Municipal Law itself provides that when municipal corporations contract debts, these debts, once acknowledged, shall be approved and included in the next budget, as a preferred payment—a provision of law which has a far moral reach, since it gives prestige to, and saves the credit of, said corporations."

After a consideration of all the reasons urged by plaintiff-appellant in support of the errors it assigned, and deciding the same we find as follows:

The Municipality of Río Piedras approved an ordinance calling for bids for the furnishing of medicines, drugs, and other pharmaceutical products, for the fiscal year 1924–25. Bids were received in accordance with this ordinance. The service was for the entire fiscal year 1924–1925, and the payment for such service covered the same period. These were the basic conditions of the contract, and in the performance of the agreement they must be adhered to.

Let us suppose that the successful bidder or contractor, Serra, Garabís & Company, S. en C., should have refused, during the course of that year, to furnish the drugs, medicines, and material which it had bound itself to supply. Undoubtedly a right of action would have accrued in favor of the other party to the contract, to compel the former to perform and to indemnify for the damages caused. In this case it is the municipality that refused to make payment; and the right of recovery belongs to the other party.

The contract having been awarded, it was incumbent on the municipality to provide funds with which to cover the delivery of medicines, etc. This was no part of the obligation of Serra, Garabís & Co., who had a right to expect the municipality to discharge its obligations by appropriating the necessary funds for this purpose.

The municipality appropriates in the budget a sum for the payment of said service and the performance of said contract. The amount thus appropriated may at times be excessive, because there may be a year in which conditions of public health are exceptionally favorable, and the whole

amount may not be needed. It is perfectly clear that the contractor has no claim to that surplus. If the amount appropriated turns out to be insufficient because more drugs had to be ordered than in any ordinary year, it is also perfectly clear that the contractor can not be made the victim of this error in the appropriation, or of the municipality's misfortune. This is what morals and common sense dictate and adjudge.

A construction of a statute which leads to absurd consequences must be rejected. In the case of *Celis Alquier* v. *Méndez*, 18 P.R.R. 86, 91, this Court said:

"While it is a principle of the law that all provisions of a statute must be given effect, along with this principle the courts have also declared that the principle should be followed unless such construction would lead to absurd results. Glover v. United States, 164 U. S. 298; United States v. Fisher, 2 Cranch (U. S.) 386; Bailey v. Commonwealth, 74 Ky. 688; Pond v. Madock, 38 Cal. 572."

In the case at bar citation is made of the twenty-sixth paragraph of section 34 of the Jones Act, the Organic Act of Puerto Rico, which reads thus:

"No appropriation shall be made, nor any expenditure authorized by the Legislature, whereby the expenditure of the Government of Puerto Rico during any fiscal year shall exceed the total revenue then provided for by law and applicable for such appropriation or expenditure . . . ."

And it is contended that this rule applies to the municipalities.

This is not the case before us. The Municipality of Río Piedras having contracted for a service, the party contracting with the municipality is not bound to make inquiry as to the possible revenues of that municipality or its expenditures, all of which should be the subject matter of a budget, the making of which is not incumbent upon the contractor, which budget is made and approved subsequent to such contract. Moreover, the nature of said contract is such that,

as far as the amount is concerned, it can not be determined exactly beforehand. There may be a year with a small number of indigent patients, where the expenditure for medicines will be moderate; and another year of epidemics, and a greater expenditure. But under no circumstances can we see how the limitation imposed upon the Legislature, with a view that no expenditure be incurred which is not within the revenues, can be applied in the instant case. Where can the proof be found herein, that when the ordinance was voted and the bids opened, the Municipality of Río Piedras knew that, with its revenues, it could not afford the expenditure for medicines and drugs for indigent patients? The application of this statutory provision in the present case would lead to the absurdity of declaring that the Municipality of Río Piedras could not adopt, at the time that it did so, an ordinance for the calling of bids for furnishing medicines and drugs for the destitute patients; and, further, that it could accept the medicines, use them in its hospital service, and not give a thought to paying for them.

Section 9 of the Municipal Law, as amended by Act No. 60 of 1921 (Session Laws, p. 436), grants the municipalities full legislative and administrative powers in all matters of purely local concern and relating to public works, education, charities, public order, and security. The Municipality of Río Piedras, when the Assembly approved the ordinance and the bids were called, was acting within its powers in conformity with the provisions of the aforesaid Law. And, from the standpoint of the contractor, the contract for the furnishing of medicines, drugs, and other supplies was valid and effective, as it was entered into by virtue of an ordinance and bids. No aggregate amount for the year is fixed therein; for this the municipality must provide in its budget, without any intervention on the part of the contractor. If the municipality does not do so, or makes an erroneous estimate, there is no reason, legal or moral, why the contractor should suffer the consequences.

There would be still less justification for permitting the defendant municipality to successfully set up its own fault or negligence. The Municipal Law provides that all expenses incurred by the government of each municipality for the needs of its offices and departments shall be paid by those municipalities, who have power to provide funds therefor (Section 8, Municipal Law of 1919—Session Laws, p. 690). If the municipality, disregarding this statutory provision, did not appropriate funds, it cannot now plead its own fault in its favor.

We believe that the party thus acting—which has provided, by an ordinance duly approved, the calling for bids for a certain service, and by the same ordinance agreed to pay for the medicines and supplies; which has made the award to a bidder, and has received and used for its own benefit the said medicines and supplies—if it has failed to appropriate sufficient funds for the payment thereof, can not invoke in its defense the fact that, in disregard of its obligations, it did not make such appropriation. It is precluded from setting up such a defense.

In closing the discussion of this point, it is well to remember that the Municipal Law, as amended by Act No. 60 of 1921, *supra,* provides as follows:

"Section 50.—That the municipalities shall not appropriate in their budgets any sum for the payment of salaries without having first made in their order, the necessary appropriations for the following obligations:

\`    *         *         *         *         *         *         *

"(b) Any deficit resulting from the operations of preceding years, or expenses to which the municipality is legally bound by contracts either entered into or for other causes. . ."

The law admits the possibility of deficits resulting from preceding years, and caused by contracts already made.

Section 10 of the Municipal Law aforesaid prescribes that bids shall be called for all public works and for the purchase of all materials when the value thereof exceeds five hundred (500) dollars in first class municipalities and two hundred

(200) dollars in all others; and gives the rules governing the bids for the execution of the work and for the furnishing of supplies or materials.

Compliance with the conditions of the ordinance and the bid has an important bearing on the validity of the contract. A strict compliance with the Municipal Accounting Regulations of the Auditor of Puerto Rico, we believe, has no such influence. The appellant makes no distinction between the making of the contract, the stage which in the civil law is called the perfection of the agreement, and the execution or consummation thereof. The ordinance and bid sufficed to render the contract in question valid and effective, creating rights and obligations between the parties thereto. Once the bid was accepted and the award made, there arose on the part of the municipality the right to have the other party to the contract furnish the medicines and supplies, and the duty or obligation to pay for them; and on the part of the successful bidder, the duty to deliver the goods or materials, and the right to receive payment therefor. The only condition established by the contract was that delivery should be made to the municipal druggist, and that the medicines, drugs, and supplies should be needed by the municipal drugstore. The accounting Regulations concern the accounts and the manner in which they must be kept by the municipalities, but does not make the contract more or less valid.

In the case of *Laborde* v. *Municipality of Isabela*, 38 P.R.R. 58, we examined the duties and the nature of the office of the Auditor of Puerto Rico, although in a different aspect than the one involved in the case at bar. There we copied section 20 of the Organic Act, which reads in part thus:

" . . . With the approval of the Governor, he shall from time to time make and promulgate general or special rules and regulations not inconsistent with the law covering the methods of accounting for public funds and property, and funds and property held in trust by the government or any of its branches; . . ."

It may thus be seen that the Regulations of the Auditor are, by the Act, limited in two aspects: First, as regards the subject matter thereof, which concerns the methods of accounting for public funds and property; second, as to their authority, limited by the words ''not inconsistent with the law''; which means, without great effort of interpretation, that the law is always paramount to any regulation; a truth which has all the characteristics of a juridical axiom.

In the decision just cited, and commenting upon the word ''settle'' used in section 20 of the Organic Law, it was said (p. 62):

''The word, nevertheless, is susceptible of various meanings. It sometimes signifies a final determination and frequently means to fix the basis of the accounting between two parties without necessarily determining the essential rights between them.''

In the case of *Costas* v. *Municipality of Las Marías*, 37 P.R.R. 18, 28–29, this Court said:

''We can not believe that it was the intention of Congress that any person who makes a contract with a municipality should first obtain the permission of the auditor to make the same. Will the persons who have bought bonds in Porto Rico under various laws made by the Legislature be subject to a revision of the validity of their contracts by the office of the Auditor of Porto Rico? Must a proposed buyer of bonds first obtain the direct approval of the auditor? We feel bound to hold the contrary. Municipalities generally, when formed into bodies politic by the Legislature, within the scope of their authority have all the rights of contract that an individual may have.

''It has always been understood that municipalities may so contract. It is inconceivable that in an act wherein Congress has prescribed that the Legislature should pass no law which would interfere with the obligation of a contract should itself pass a law which would subject every person contracting with a municipality to the necessity of first obtaining the authority of a third person who is not one of the contracting parties.

''We are most desirous in this case, in which neither The People of Porto Rico nor the auditor has been made a party, to refrain from placing any undue limitation on the powers and duties of the

Auditor of Porto Rico. The appellant says that his duties are merely to 'audit.' We are not sure of the extension of this word and we are not satisfied that the auditor has not broader powers than a supposed mere audit.''

We must consider another important point.

At the outset let us regard as settled that the defendant did not set up any fraud. The averment that the medicines and drugs were neither ordered nor received, can not be considered except as an allegation of fact. We do not believe that in a suit, which is a serious matter, it was the intention to say that, because in the judgment of the appellant certain requisites were lacking, the drugs can not be understood to have been ''ordered'' or ''received.'' This would be but a mere juggling of words, and we would feel under no duty to consider it. But, as a matter of fact, the evidence has been adverse to such denial. This denial was not equivalent to an allegation of fraud, which, as has been frequently held, must be expressly alleged.

In the answer, we do not find that the supply contract is attacked as being invalid. Now, on appeal, this attack is attempted, and we hold that this is not the proper procedure and the appellant has no right to do this; it can not, at this stage of the proceedings, change its theory of the case.

Can the defendant now defend itself asserting the nullity of the contract, or the invalidity of the acts consequent thereto?

In non-juridical relations, if a person repudiates not only his own prior statement and conduct, but also the natural consequences thereof, it is the province of ethics to judge him, condemning such behavior and more or less severely censuring the person so behaving. But in the field of juridical relations, those statements or conduct may create a legal status upon which other persons may rely, either directly and immediately, as is the case with a contracting party, or mediately and indirectly, as is the case with those who have derived from a contracting party a right to be exercised or

an obligation to be performed. The social order is, in such case, affected. And then the redress arises from the law. This is the basis of the rule that no one can repudiate his own acts, known to all legislations, from the earliest to the most modern, and especially studied by the jurisprudence of the United States in evolving the doctrine of estoppel.

Individual and natural, as well as collective and juridical, persons are amenable to this rule. In its application to the latter entities we find certain limitations, arising from the special character of such entities.

In the instant case we have:

(a) A municipality which has, by law, the power to invite bids in connection with the awarding of a contract for furnishing medicines and drugs for a year, by means of an ordinance, in which the terms and conditions of the bids were specified.

(b) An ordinance in which the calling of said bids was authorized, the term for the service was fixed at one year, from 1924 to 1925, and it was provided that the delivery of medicines, drugs, and supplies be made to the municipal druggist, and that upon receipt of those goods by him, the contractor would have the right to collect their value.

(c) A bid which was awarded to Serra, Garabís & Company, S. en C.

(d) A constract for the supplying of medicines and drugs which was performed by said Serra, Garabís & Company, S. en C., who delivered the medicines, drugs, and supplies ordered from them by the municipal druggist. The municipality admits in part the performance of said contract, and this part it considers as valid and effective; and it now denies the efficacy of other deliveries and alleges that they were void because the orders did not bear the signature of the Municipal Director of Charities.

(e) A refusal on the part of the municipality to pay for the medicines, drugs, and supplies which, according to the evidence, were delivered; and as to restoring them it now

alleges that the medicines are not in the possession of a third person, but completely beyond its possession because they were consumed and used in the hospital (page 31 of the printed brief).

Under these circumstances, the defendant municipality is estopped to allege said defense, because by its own acts it led the plaintiff to believe that it could deliver its goods, as they were called for, and have a right to collect their value. The municipality created a legal status which it can not now repudiate. It accepted, received, and consumed the medicines, as appears from appellant's brief. And then set up that it had no funds appropriated in the budget. It appears that, in the budget for the year in question, four thousand dollars was appropriated for medicines for the indigent patients.

In the case of *Rabell* v. *Rodríguez et al.*, 24 P.R.R. 526, 533–534, this Court, in discussing the doctrine of estoppel, has said:

" . . . the doctrine of estoppel as announced by the district court is quite as well known to the Civil Code as to any court of equity, and from either point of view the application made thereof to the facts in the case at bar was entirely proper. To hold that a neighbor may sit silently by for weeks or months observing the gradual construction of a house on an adjoining lot, or breaking such silence at intervals by indulging in pleasant conversation with the owner of the new building, commenting on its attractive appearance but without sign of protest or objection, and thereafter may obtain a judicial order for the demolition of such structure merely because municipal or Insular Government officials may have permitted certain slight deviations from some building ordinance or health regulation, would be such plain travesty on justice as to shock the conscience and the intelligence of any good citizen whether lawyer or layman."

These principles are applicable to the case at bar; and they are identical with those which inclined the conscience and the mind of the district judge to render the judgment appealed from.

It has been held that in the case of a municipality, if the contract affected is void as being contrary to the Constitution or a statute, the municipality is not estopped to deny the validity of the contract. But in the case at bar we do not find the contract to be void as contrary to the Constitution or a statute, since the subject matter involved is a public service for which the municipality may contract through an ordinance and a call for bids, and these requirements were complied with.

But it has also been declared that a municipality which has received the benefits of a contract that it had no power to make, is estopped to deny the lack of authority on its part to enter into such contract unless the benefits received are returned.

In the case of *Macon* v. *Huff,* 60 Ga. 221, it was said:

"Equity, however, demands that each litigant seeking equity must do equity; and, inasmuch as defendant has expended large sums of money in fencing, filling, draining and decorating the park, the benefit of which has been received by the city, equity shall not come to the aid of plaintiff to annul the contract, although it be illegal, unless plaintiff first does equity, and to do equity the city must pay defendant the money so invested, together with interest, restoring plaintiff (sic) as far as practicable, to its status quo, in the absence of fraud on his part."

In *Grand Island Gas Co.* v. *West,* 28 Neb. 852, 45 N.W. 242. the city of Grand Island entered into a contract with the Grand Island Light and Fuel Co., for the light service for one year, and the company furnished the light and presented bills for the months of July, August, September, October, and November, and these were allowed. A taxpayer brought suit against the company and various city officials and obtained a decree restraining the city from paying the warrants in question and the company from receiving compensation for the light furnished. In the decision it was said:

"We think the court erred in enjoining the payment of these claims allowed by the city council. The city has claimed the benefit

of the contract by appropriating the light thus furnished, and it would be inequitable to cancel the contract without restoring to the Light & Fuel Company, not exceeding the contract price, the reasonable value of the light thus appropriated prior to the bringing of this suit. It is a familiar rule that he who seeks equity must do equity. The fact that the contract under which the light was furnished was illegal, can make no difference. It does not relieve the municipality from being just.''

It is unnecessary to cite further cases.

The errors assigned are nonexistent, and the judgment appealed from must be affirmed.